UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| MAYDA J. P.,[1]<br><br>     Plaintiff,<br><br> vs.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner, Social Security<br>Administration,<br><br>     Defendant. | CIV. 10-5016-JLV<br><br><br>ORDER |

**INTRODUCTION**

On September 5, 2006, plaintiff Mayda J. P. applied for disability

insurance benefits ("DIB") and supplemental security income ("SSI") pursuant

to Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33, 1381-83f,

respectively. (Administrative Record, pp. 12, 101-07). Following an adverse

decision, Mayda P. timely filed her complaint in district court. (Docket 1). On

November 28, 2011, the court entered an order vacating the decision of the

Commissioner and remanding plaintiff's case for a new hearing. (Docket 32).

The court retained jurisdiction pursuant to sentence six of 42 U.S.C. § 405(g).

Id. at p. 12. On July 8, 2016, the Commissioner filed a motion to reopen the

---

[1]The Administrative Office of the Judiciary suggested the court be more
mindful of protecting from public access the private information in Social
Security opinions and orders. For that reason, the Western Division of the
District of South Dakota will use the first name and last initial of every non-
governmental person mentioned in the opinion. This includes the names of
non-governmental parties appearing in case captions.

case.  (Docket 91).   The Commissioner reported that on January 13, 2016, an administrative law judge ("ALJ") "issued a partially favorable decision, finding [Mayda P.] disabled beginning December 29, 2014, for purposes of DIB and SSI."  (Docket 92 ¶ 4).   The court granted the motion to reopen the case.  (Docket 95).   Mayda P. filed a motion seeking reversal of the decision of the Commissioner and requesting an order for calculation and payment of benefits.  (Docket 99).   Plaintiff sought DIB and SSI benefits for the period August 8, 2006, through December 28, 2014, and asked the court to require the Commissioner to compute benefits.[2]  (Docket 100).   The court affirmed "the decision of the Commissioner . . . as it relates to an award of DIB and SSI benefits beginning December 29, 2014," and reversed "the decision of the Commissioner . . . as it relates to the denial of DIB and SSI benefits prior to December 29, 2014," and remanded the case "to the Commissioner for the purpose of calculating and awarding benefits to the plaintiff Mayda J. [P.] for the period of August 8, 2006, through December 28, 2014."   (Docket 104 at pp. 32-33).

Pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, Catherine Ratliff, counsel for Mayda P., timely moved for an award of attorney's fees and expenses.   (Docket 106).   The motion seeks an award of $72,656.72 in attorney's fees, court costs of $400 and expenses of $927.37 and $4,722.24

---

[2]Plaintiff does not challenge the portion of the Commissioner's decision finding her disabled as of December 29, 2014.   (Docket 99).

in state and local sales tax.   Id. at p. 1.   The Commissioner opposes an award

of EAJA fees.   (Docket 110).   For the reasons stated below, the court grants in

part and denies in part Mayda P.'s motion.

## ANALYSIS

The EAJA permits an award to a plaintiff of fees and expenses[3] incurred

in any civil action brought by or against the United States, "unless the court

finds that the position of the United States was substantially justified or that

special circumstances make an award unjust."   28 U.S.C. § 2412(d)(1)(A).

"Whether or not the position of the United States was substantially justified

shall be determined on the basis of the record (including the record with

respect to the action or failure to act by the agency upon which the civil action

is based) which is made in the civil action for which fees and other expenses

are sought."   28 U.S.C. § 2412(d)(1)(B).

The government bears the burden of proving its position was

substantially justified.   Goad v. Barnhart, 398 F.3d 1021, 1025 (8th Cir.

2005).   A social security claimant may be the prevailing party for

purposes of the EAJA, yet still not be entitled to an award of fees if the

government's position was substantially justified.   "A position enjoys

---

[3]Fees and expenses include "the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees . . . ."   28 U.S.C. § 2412(d)(2)(A).

substantial justification if it has a clearly reasonable basis in law and fact."

Id. A loss on the merits by the government does not create a presumption that it lacked substantial justification for its position. Id. This distinction is explained as follows:

> The district court correctly recognized that "fees are not . . . awarded just because the Secretary [loses a] case." The Secretary's position in denying benefits can be substantially justified even if the denial is unsupported by substantial evidence on the record as a whole. This is so because the substantial evidence and substantial justification standards are different. Under the substantial evidence standard, the district court must consider evidence that both supports and detracts from the Secretary's position. In contrast, under the substantial justification standard the district court only considers whether there is a reasonable basis in law and fact for the position taken by the Secretary. Because the standards are "neither semantic nor legal equivalents," the Secretary can lose on the merits of the disability question and win on the application for attorney's fees.

Welter v. Sullivan, 941 F.2d 674, 676 (8th Cir. 1991) (internal citations omitted). For purposes of this analysis, the " 'position of the United States' means, in addition to the position taken by the United States in the civil action, the action . . . by the agency upon which the civil action is based . . . ." 28 U.S.C. § 2412(d)(2)(D).

The Commissioner's argument in defense of the agency decision is broken down into two separate parts. First, the Commissioner contends the decision of ALJ #1[4] before the court's sentence six remand was substantially

---

[4]"A total of five ALJs were involved in [Mayda P.'s] case." (Docket 104 at p. 4 n.5). "For clarity they [were] referred to by number and not by name." Id.

justified.   (Docket 110 at pp. 3-5).   Second, the Commissioner contends the

decision of ALJ #5 was substantially justified.   Id. at pp. 5-7.   Each of these

arguments will be separately addressed.

DECISION OF ALJ #1

The Commissioner argues the 2011 sentence six remand order was

premised on plaintiff's "failure to meet her burden to produce evidence."   Id. at

p. 3.   The Commissioner submits:

> [Mayda P.] was represented during the administrative process and
> had multiple opportunities to ensure a complete record.
> Nonetheless, following numerous levels of administrative review, in
> her initial brief to this Court, Plaintiff appended approximately 100
> pages of additional medical evidence, much of which she failed to
> submit to the ALJ or the Appeals Council, despite the fact that all of
> this evidence was in existence at the time of the initial ALJ decision
> and nearly all could reasonably have been proffered for the ALJ's
> consideration.

Id. at p. 4.   The Commissioner contends "Plaintiff did not notify the ALJ of any

outstanding evidence as of her February 2009 initial hearing . . . . Plaintiff

should not be rewarded for failing her basic duty to proffer to the

Commissioner the extensive, existing evidence relating to whether or not she

was disabled."   Id.   "This failure," the Commissioner argues "prevented the

Court from considering the merits and required the Commissioner's

consideration of additional evidence on remand."   Id.

Plaintiff opposes the Commissioner's argument.   (Docket 111).   First,

plaintiff points out Mayda P. was not represented during her 2009 hearing, but

rather appeared pro se.   Id. at p. 2.   Second, plaintiff argues the

"Commissioner's position that [Mayda P.] lost her case due to her own fault in not submitting her records to [ALJ #1] suggests the government has not accepted the principles enunciated in [Snead v. Barnhart, 360 F.3d 834, 838 (8th Cir. 2004)]." Id. at p. 4.

During the 2009 hearing, ALJ #1 found Mayda P. suffered from among other severe impairments, "memory impairment with borderline intellectual functioning." (Docket 104 at p. 5 (internal reference and footnotes omitted). In the first set of JSMF, the Commissioner acknowledged Mayda P. had a full scale IQ of 76. (Docket 18 ¶ 26). Mayda P.'s intellectual testing resulted in "borderline scores . . . on tests measuring factual knowledge and ability to use reasoning skills and make judgement [sic]." Id. ¶ 28. In the second set of JSMF, the Commissioner acknowledged Mayda P. had a "a full scale IQ of 76, indicating borderline general intelligence." (Docket 98 ¶ 270). Also in the JSMF the Commissioner agreed Mayda P. appeared *pro se* at the 2009 hearing before ALJ #1. See id. ¶¶ 3-4.

In the 2011 remand order, the court listed the medical records which ALJ #1 was put on notice of and which should have been included in the administrative record. (Docket 32 at p. 9). The court found those "medical records [were] material . . . non-cumulative . . . and probative of [Mayda P.'s] condition for the time period for which benefits were denied . . . ." Id. at p. 11 (internal quotation marks and citation omitted). The court found "[t]he

Commissioner offers no explanation or good reason why these relevant medical records were never requested." Id. (referencing 28 U.S.C. § 404.1512(d)).

It is incomprehensible to the court how the Commissioner could argue that an individual suffering a severe memory impairment indicative of borderline intellectual functioning should carry the burden of producing medical records known to ALJ #1 and within the obligation of ALJ #1 to obtain. The court finds the Commissioner's current argument disingenuous and without merit.

The court finds the government cannot meet its burden in showing substantial justification for its position. The government's position was not well founded in fact or law, as explained in the court's reversal and remand order. Lauer v. Barnhart, 321 F.3d 762, 764 (8th Cir. 2003) ("The standard is whether the Secretary's position is 'clearly reasonable, well founded in law *and fact*, solid though not necessarily correct.' ") (citation omitted).

DECISION OF ALJ #5

The Commissioner argues the decision of ALJ #5 was substantially justified. (Docket 110 at pp. 5-7). "The Commissioner submits that 42 U.S.C. § 423(d)(2)(A) does not require that the job opportunities exist within the local area, but only that the job opportunities exist in the national economy." Id. at p. 5. The Commissioner argues "[a] vocational expert is only required to state his opinion as to the number of jobs available in the national economy to a person with the claimant's RFC, age, work experience, and

7

education." Id.  While this court's finding that ALJ #5 erred was premised on

several cases from the United States Court of Appeals for the Eighth Circuit,

the Commissioner contends the court failed to consider Dressel

v. Califano, 558 F.2d 504, 508-09 (8th Cir. 1977).  Id. at p. 6.

The Commissioner argues ALJ #5 considered two jobs a vocational expert

identified which "existed in significant numbers in the national economy—final

assembler with 30,100 jobs nationally, and bench hand with 30,200 jobs

nationally."  Id.  With this supporting testimony, the Commissioner contends

"it is not the facts or the ultimate merits of the case, but the standard of review

utilized that differs as between the Court's determination on the merits and its

determination on the fee issue currently before it.   For the reasons discussed

above, the Commissioner's decision in this case was substantially justified."

Id. at p. 7.

In response, Mayda P. points out that following the decision of ALJ #3,

"the Appeals Council found that 350 'local' jobs were not a significant number."

(Docket 111 at p. 5) (referencing Docket 104 at pp. 29-30).   Plaintiff argues the

decision of ALJ #5 failed to mention that "the number of regional jobs was

227."  Id.  Plaintiff submits ALJ #5's decision that the national job numbers

satisfied 42 U.S.C. § 423(d)(2)(A) was clearly wrong.  Id.

For clarity of the court's analysis, it is necessary to incorporate from the

2018 order the court's consideration of this issue.   (Docket 104 at pp. 29-31).

"It must be remembered that ALJ #2 found [Mayda P.] was not disabled

because she could perform three sedentary jobs, specifically: microfilm document preparer, with 100,000 jobs in the national economy; addresser, with 20,000 jobs in the national economy; and sack repairer with 12,000 jobs in the national economy." Id. at p. 29 (internal reference omitted). "The Appeals Council expressed concern because this finding did not consider the testimony of the vocational expert which identified the following local jobs in the state of South Dakota: microfilm document preparer, 200 local jobs; addresser, 100 local jobs; and sack repairer, 50 local jobs." Id. at pp. 29-30 (internal reference omitted). "The Appeals Council remanded the case declaring '[a]lthough the number of national jobs appears to represent a significant number of jobs, the number of local jobs identified does not appear to represent a significant number of jobs. Accordingly, further evaluation as to whether a significant number of other jobs exist is necessary.' " Id. at p. 30 (internal reference and emphasis omitted).

"The Appeals Council's own determination in 2014 that 350 jobs in South Dakota would not satisfy the requirements of § 404.1566 is a strong endorsement that ALJ #5's decision is not sustainable." Id. "Had the Appeals Council in 2014 believed the national numbers satisfied § 404.1566, there would have been no need to comment on that section of the ALJ's decision or remand for development of additional job evidence because the step five evaluation would have been satisfied by the national numbers." Id. at p. 30 n.26.

"Incredibly, in 2015 the Commissioner presented **no** testimony of the number of jobs available to [Mayda P.] in the state of South Dakota or the impact upon her if she is compelled to travel to the other regions or nationally for work." Id. (emphasis in original). "This total absence of evidence cannot and does not sustain the Commissioner's burden at step five." Id. at p. 30 (referencing Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004)). "Furthermore, the court is unable to identify one case in the Eighth Circuit which would support a conclusion that 227 jobs in the surrounding states of Wyoming, Montana and North Dakota satisfy the 'significant number' criteria of 20 CFR §§ 404.1566(b) & (d) for a South Dakota resident." Id. at p. 30.

The court specifically laid out its research noting "the rulings of a number of courts which each made specific reference to the number of jobs available in a plaintiff's state of residence as being significant at step five." Id. at pp. 25-27. The Commissioner fails to identify one case which contradicts the court's analysis and permits a step five finding of a claimant not being disabled when there are no jobs available in claimant's state of residence. While not the final word on the present issue before the court, it must be noted the Commissioner did not appeal from the 2018 order. Had the Commissioner believed the significant numbers in the national economy argument was meritorious, an appeal to the Eighth Circuit would most certainly have been filed.

The court finds the government cannot meet its burden in showing substantial justification for its position. The government's position was not well founded in fact or law, as explained in the court's reversal and remand order. Lauer, 321 F.3d at 764.

The court finds Mayda P. is entitled to an award pursuant to the EAJA. 28 U.S.C. § 2412(d)(1)(A).

Addressing EAJA fees following a sentence six remand under 42 U.S.C. § 405(g), the Supreme Court declared "[o]ur past decisions interpreting other fee-shifting provisions make clear that where administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded." Sullivan v. Hudson, 490 U.S. 877, 888 (1989) (referencing Pennsylvania v. Delaware Valley Citizens' Council, 478 U.S. 546 (1986); New York Gas Light Club, Inc. v. Carey, 447 U.S. 54 (1980)). "As in Delaware Valley, the administrative proceedings on remand in this case were 'crucial to the vindication of [respondent's] rights.'" Id. at 889 (citing Delaware Valley Citizens' Council, 478 U.S. at 561). "No fee award at all would have been available to respondent absent successful conclusion of the remand proceedings, and the services of an attorney may be necessary both to ensure compliance with the District Court's order in the administrative proceedings themselves, and to prepare for any further proceedings before the District

11

Court to verify such compliance." Id. "Since the judicial review provisions of the Social Security Act contemplate an ongoing civil action of which the remand proceedings are but a part, and the EAJA allows 'any court having jurisdiction of that action' to award fees, . . . we think the statute, read in light of its purpose 'to diminish the deterrent effect of seeking review of, or defending against, governmental action,' . . . permits a court to award fees for services performed on remand before the Social Security Administration." Id. at 890 (citing 28 U.S.C. § 2412(d)(1)(A) and 94 Stat. 2325). "Where a court finds that the Secretary's position on judicial review was not substantially justified within the meaning of the EAJA, . . . it is within the court's discretion to conclude that representation on remand was necessary to the effectuation of its mandate and to the ultimate vindication of the claimant's rights, and that an award of fees for work performed in the administrative proceedings is therefore proper." Id. (referencing Pierce v. Underwood, 487 U.S. 552, 563-568 (1988); Delaware Valley Citizens' Council, 478 U.S. at 561; Webb v. Dyer County Board of Education, 471 U.S. 234, 243 (1985)).

Based on this analysis, the Supreme Court held:

We conclude that where a court orders a remand to the Secretary in a benefits litigation and retains continuing jurisdiction over the case pending a decision from the Secretary which will determine the claimant's entitlement to benefits, the proceedings on remand are an integral part of the "civil action" for judicial review, and thus attorney's fees for representation on remand are available subject to the other limitations in the EAJA.

Id. at 892.   See also Hafner v. Sullivan, 972 F.2d 249, 251 (8th Cir. 1992) ("[T]he Supreme Court not only contemplated EAJA fee applications after the Secretary's proceedings on remand but also authorized the award of fees for the successful completion of 'administrative proceedings [on remand that] are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees.' " (citing Hudson, 490 U.S. at 888)).

Mayda P.'s "case has a long and protracted history."   (Docket 104 at p. 5).   To properly evaluate plaintiff's attorney's fees request it is necessary to break the analysis into four separate time periods: the 2011 sentence six remand order; the administrative activities between 2012 and 2016; the 2018 order; and the 2018 EAJA motion.

ESTABLISHING AN HOURLY RATE

Ms. Ratliff asks the court to set the hourly rate at $167.50 for the period of the 2011 sentence six remand order; $174.38 for the 2012-2016 administrative activities; and $181.25 for the 2018 order and the 2018 EAJA motion after factoring in the cost of living adjustment permitted by the EAJA. (Docket 107-1 at p. 2).   The Commissioner did not address the hourly rates requested.   (Docket 110 at pp. 8-9).

The EAJA sets a limit of $125 per hour for attorney's fees. 28 U.S.C. § 2412(d)(2)(A). However, a court may award a higher hourly fee if "an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee." Id. The court reviewed cost-of-living calculations performed in 15 previous attorney's fees awards in Social Security disability cases before the court. The rates proposed by Ms. Ratliff are either at or below the approved hourly rates under the EAJA during the relevant time periods. The court finds the rates presented by Ms. Ratliff are reasonable considering the training and experience of Ms. Ratliff in the practice of social security law.

A court has the discretion to reduce the amount of the award or deny an award "to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy." 28 U.S.C. § 2412(d)(1)(C). The court also must decide whether the hours spent by Ms. Ratliff representing Mayda P. were "reasonably expended." See Blum v. Stenson, 465 U.S. 886, 901 (1984); 28 U.S.C. § 2412(d)(2)(A). The administrative record in Mayda P.'s case was 3,078 pages in length in five volumes.

2011 SENTENCE SIX REMAND ORDER

Due to the manner in which Ms. Ratliff recorded her hours in her time log (Docket 107-2), the court finds it most helpful to aggregate the hours into four discrete categories: (1) time spent with the client or performing

14

administrative functions and preparing the summons and complaint; (2) time spent preparing the joint statement of material facts ("JSMF") and the joint statement of disputed facts ("JSDF"); (3) preparing plaintiff's motion and supporting memorandum to reverse the decision of the Commissioner; and (4) preparing plaintiff's reply brief.

Under the first category of time, Ms. Ratliff billed 3.42 hours in this category. The court finds some reductions are proper. Administrative activities and time which should otherwise have been performed by a legal secretary prior to the filing of the complaint must be removed from EAJA consideration. See Stickler v. Berryhill, Civ. 14-5087, 2017 WL 4792220, at *2 (D.S.D. Oct. 23, 2017). The court finds 3 hours compensable. See Dillon v. Berryhill, Civ. 15-5034, 2017 WL 4792226, at *2 (D.S.D. Oct. 23, 2017).

Turning to the second category of time, Ms. Ratliff spent 48.68 hours preparing the JSMF and the JSDF in Mayda P.'s case. (Docket 107-2 at pp. 1-5). This court requires attorneys in social security cases to submit a highly detailed JSMF and JSDF. (Docket 11 at pp. 1-2). In Mayda P.'s case, the administrative record at that time was 390 pages in length and involved a variety of complex medical issues. See Docket 18. Due to the size of the administrative record, the JSMF and the JSDF totaled 34 pages. (Dockets 18 and 19). Due to the level of detail the court requires of attorneys when submitting the JSMF and the JSDF, and the size of the administrative record,

the court finds Ms. Ratliff reasonably expended 19.68 hours preparing the JSMF in the case.   See Stickler, Civ. 14-5087, 2017 WL 4792220, at *2.

As for the third category of time, Ms. Ratliff spent 66.75 hours preparing plaintiff's motion and accompanying brief to reverse the decision denying her benefits.   (Docket 107-2 at pp. 1-5).   Because of the nature of the plaintiff's challenges to the Commissioner's decision, the court finds 39.43 hours spent preparing her motion and supporting memorandum to reverse the decision of the Commissioner is a more appropriate amount of time given the facts and complexity of the case.   See Stickler, Civ. 14-5087, 2017 WL 4792220, at *3.

As for the fourth category of time, Ms. Ratliff spent 8.75 hours preparing plaintiff's reply brief to reverse the decision denying her benefits.   (Docket 107-2 at p. 5).   The court finds 8.75 hours was reasonably spent in this category. See Stickler, Civ. 14-5087, 2017 WL 4792220, at *3.

In this section, the court finds 48.18 hours were reasonably expended by Ms. Ratliff based on the complexity of this case, for an attorney's fee award at $167.50 per hour of $8,070.15.

<u>2012-2016 ADMINISTRATIVE ACTIVITES</u>

Following the 2011 sentence six remand order, four different ALJs conducted five evidentiary hearings and the Appeals Council conducted four remand hearings.   (Docket 104 at pp. 6-20).   Following the decision of ALJ #5, the Appeals Council declined to assume jurisdiction.   Id. at p. 20.   For ease of

analysis the court will break this five-year period into the activities associated with each ALJ.

ALJ #2—First Hearing

Ms. Ratliff spent 66.27 hours between the 2011 remand order and the unfavorable decision of ALJ #2 on January 17, 2013. (Docket 107-2 at pp. 5-16; see also Docket 104 at p. 6). Preparing for an administrative evidentiary hearing involves significantly different activities than conducting an appeal to the district court. Counsel for a claimant must organize evidence, communicate with the client to locate medical and employment records and prepare the client to testify, communicate with opposing counsel and work with the Social Security Administration, attend the evidentiary hearing, prepare and submit post-hearing briefing. Fees for all this time, if reasonable, must be awarded to a claimant. "[T]he specific purpose of EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." Commissioner, I.N.S. v. Jean, 496 U.S. 154,163 (1990) (referencing Hudson, 490 U.S. at 883). While Ms. Ratliff did not charge for her time dealing with her client, the court finds additional time must be deducted. Time spent working the client through her lifetime crises and anxieties is not reasonably associated with advocating claimant's case before the ALJ.

The court finds 63.44 hours is a more appropriate amount of time during this period of the case given the facts and complexity of this case.   See Stickler, Civ. 14-5087, 2017 WL 4792220, at *3.

ALJ #2—Second Hearing

After the unfavorable first decision of ALJ #2, Ms. Ratliff was compelled to file exceptions with the Appeals Council.   (Docket 104 at p. 8).   The Appeals Council vacated the first decision of ALJ #2 and remanded Mayda P.'s case for further evidence and a new decision.   Id.   On July 12, 2013, ALJ #2 issued a second unfavorable decision.   Id. at p. 9.   It is during this period that Ms. Ratliff's motion for attorney's fees is analyzed.

Ms. Ratliff spent 12.36 hours between the unfavorable decision of ALJ #2 on January 17, 2013, and the second unfavorable decision of ALJ #2 on July 12, 2013.[5]   (Docket 107-2 at pp. 16-19).   For the same reasons articulated above, the court finds 11.52 hours a more appropriate amount of time during this stage of the case.

ALJ #3

After the second unfavorable decision by ALJ #2, Ms. Ratliff appealed to the Appeals Council.   (Docket 104 at p. 9).   On January 2, 2014, the Appeals Council assumed jurisdiction.   Id. at p. 10.   The Appeals Council remanded Mayda P.'s case with specific instructions for reconsideration by a different

---

[5]Mayda P. "waived appearance at the second remand hearing for personal reasons."   (Docket 104 at p. 9 n.14).

ALJ.  Id. at pp. 10-11.  On June 18, 2014, ALJ #3 issued an unfavorable

decision.  Id. at p. 11.  It is during this period that Ms. Ratliff's motion for

attorney's fees is analyzed.

Ms. Ratliff spent 33.28 hours between the second unfavorable decision of

ALJ #2 on July 12, 2013, and the unfavorable decision of ALJ #3 on June 18,

2014.  (Docket 107-2 at pp. 19-26).  For the same reasons articulated above,

the court finds 31.67 hours a more appropriate amount of time during this

stage of the case.

ALJ #4

After the unfavorable decision by ALJ #3, Ms. Ratliff appealed to the

Appeals Council.  (Docket 104 at p. 12).  For a third time, the Appeals Council

assumed jurisdiction.  Id.  It remanded Mayda P.'s case with new instructions

for reconsideration by yet another ALJ.  Id. at pp. 12-13.  On March 25, 2015,

ALJ #4 issued a partially unfavorable decision.  Id. at pp. 13-15.  Ms. Ratliff's

attorney's fees motion is analyzed during this period.

Ms. Ratliff spent 53.27 hours between the unfavorable decision of ALJ #3

on June 18, 2014, and the partially unfavorable decision of ALJ #4 on March

25, 2015.  (Docket 107-2 at pp. 26-31).  During this period Ms. Ratliff filed a

motion and supporting memorandum asking the court to compel the

Commissioner to issue a decision without further development of the 1673-

page administrative record.  (Dockets 64 & 65).  Following the completion of

briefing and finding no good cause, the court denied plaintiff's motion. (Docket 69).

The court has the discretion to reduce the amount of the award or deny an award "to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy." 28 U.S.C. § 2412(d)(1)(C). The court finds Ms. Ratliff's time, 6.85 hours, spent on this collateral attack on the procedures of the Social Security Administration was not well founded and not within the principles by which an award pursuant to the EAJA is based. For all the same reasons articulated above, the court finds 46.42 hours a more appropriate amount of time during this stage of the case.

ALJ #5

Following the partially unfavorable decision of ALJ #4 on March 25, 2015, plaintiff timely appealed to the Appeals Council. (Docket 104 at p. 15). "On August 31, 2015, the Appeals Council assumed jurisdiction of the case for a fourth time." Id. "It affirmed ALJ #4's finding that [Mayda P.] 'was disabled beginning December 29, 2014,' " and "vacated the remainder of the decision 'as it relates to the period prior to December 29, 2014.' " Id. "On January 13, 2016, ALJ #5 issued an unfavorable decision." Id. at p. 18. It is during this period that Ms. Ratliff's motion for attorney's fees is analyzed.

Ms. Ratliff spent 84.93 hours between the partially unfavorable decision of ALJ #4 on March 25, 2015, and the unfavorable decision of ALJ #5 on

January 13, 2016.[6]   (Docket 107-2 at pp. 31-41).   For the same reasons articulated above, the court finds 81.49 hours a more appropriate amount of time during this stage of the case.

In summary, the hours approved by the court for Ms. Ratliff's work during the 2011-2016 administrative activities are:

| | |
|---|---|
| ALJ #2 first hearing | 63.44 hours |
| ALJ #2 second hearing | 11.52 hours |
| ALJ #3 | 31.67 hours |
| ALJ #4 | 46.42 hours |
| ALJ #5 | 81.49 hours |
| | 234.54 hours |

For these 234.54 hours at $174.38 per hour Ms. Ratliff is entitled to an award of $40,899.09.

<u>2018 ORDER</u>

Again, because of the manner in which Ms. Ratliff recorded her hours in her time log (Docket 107-2 at pp. 51-50), the court finds it helpful to aggregate the hours into four discrete categories: (1) time spent with the client or performing administrative functions and preparing the summons and complaint; (2) time spent preparing the joint statement of material facts ("JSMF") and the joint statement of disputed facts ("JSDF"); (3) preparing plaintiff's motion and supporting memorandum to reverse the decision of the Commissioner; and (4) preparing plaintiff's reply brief.

---

[6]During this period the administrative record grew from 1,792 pages to 2,109 pages.   <u>See</u> Docket 107-2 at pp. 31 & 33.

Under the first category of time, Ms. Ratliff billed 3.84 hours. The court finds these hours reasonable and compensable. See Dillon, Civ. 15-5034, 2017 WL 4792226, at *2 (D.S.D. Oct. 23, 2017).

Turning to the second category of time, Ms. Ratliff spent 69.92 hours preparing the JSMF and JSDF. (Docket 107-2 at pp. 42-46). In Mayda P.'s case, the administrative record was massive, now consisting of 3,078 pages in five volumes and involved a variety of complex medical, RFC and employment issues. See Docket 104.

Initially Ms. Ratliff proposed a JSMF of 56 pages. (Docket 107-2 at p. 42). Commissioner's counsel rejected plaintiff's proposed JSMF and chose to rewrite "the document from scratch, from the government's perspective excluding P's facts and not indicating which of [plaintiff's] facts [counsel] has deleted." Id. at p. 43. Over the course of the next two months, counsel worked back and forth seeking compromise on the content of the JSMF. Id. at pp. 43-46. During this time the Commissioner's counsel changed, requiring the parties to revisit earlier drafts of the JSMF. Id. at pp. 44-46. In the end, the JSMF grew to 197 pages and their JSDF was 36 pages. (Dockets 98 & 98-1).

Plaintiff's entitlement to reasonable attorney's fees should not be reduced because of the level of advocacy asserted in developing a comprehensive JSMF out of a 3,078-page administrative record spanning

10 years.   Due to the level of detail the court requires of attorneys when submitting the JSMF and JSDF and the size of the administrative record, the court finds Ms. Ratliff reasonably expended 69.92 hours preparing the JSMF and JSDF in the case.   See Stickler, Civ. 14-5087, 2017 WL 4792220, at *2.

As for the third category of time, Ms. Ratliff spent 28.5 hours preparing plaintiff's motion and accompanying brief to reverse the decision denying her benefits.   (Docket 107-2 at pp. 46-47).   It appears that a portion of this time was associated with technical issues related to Ms. Ratliff's access to her own copy of the JSMF and communicating with another attorney who represents claimants before the Social Security Administration.   The court finds this time is not compensable.

Because of the nature of the plaintiff's challenges to the Commissioner's decision, the court finds 24.5 hours spent preparing her motion and supporting memorandum to reverse the decision of the Commissioner is a more appropriate amount of time given the facts and complexity of the case.   See Stickler, Civ. 14-5087, 2017 WL 4792220, at *3.

As for the fourth category of time, Ms. Ratliff spent 34.5 hours preparing plaintiff's reply brief to reverse the decision denying her benefits.   (Docket 107-2 at pp. 46-47).   Much of this time appears to have been spent rearranging arguments, attempting to express counsel's long-term frustration with the volume of the record and the internal conflicts of the ALJs' prior decisions.

23

These activities are not compensable under the EAJA. The court finds 22.75 hours was reasonably spent in this category. See Stickler, Civ. 14-5087, 2017 WL 4792220, at *3.

Related to the 2011, Order the court finds 121.26 hours were reasonably expended by Ms. Ratliff based on the complexity of this case. For these 121.26 hours charged at $181.25 per hour Ms. Ratliff is entitled to an attorney's fee award of $21,978.38.

2018 EAJA MOTION

The next category of time is the 7.5 hours Ms. Ratliff spent preparing the motion for attorney's fees. (Dockets 107-2 at p. 50 and 111 at p. 2). The Supreme Court held that attorney's fees under the EAJA may be awarded for the time spent applying for the EAJA fee award. Jean, 496 U.S. at 162.

It concerns the court Ms. Ratliff records 4 hours for "[e]nter journal entries in Time and Expense Log." (Docket 107-2 at p. 50). This is the type of activity which should have been an ongoing function of her law office over the course of the past eight years. These are "[p]urely clerical or secretarial tasks [which] should not be billed at a lawyer or paralegal rate, regardless of who performs them." Johnson v. Barnhart, No. 03-0054, 2004 WL 213183, at *3 (W.D. Mo. Jan. 13, 2004). Ms. Ratliff is entitled to recover for 3.5 hours reasonably expended to submit the EAJA motion and respond to the Commissioner's opposing brief. See Dillon, Civ. 15-5034, 2017 WL 4792226,

at *3.   For these 3.5 hours at $181.25 per hour Ms. Ratliff is entitled to an attorney's fee award of $634.38.

<u>SUMMARY OF ALL ACTIVITIES AND ATTORNEY'S FEES AWARDED</u>

Ms. Ratliff is entitled to total attorney's fees as follows:

| | |
|---|---|
| 2011 Sentence Six Remand Order | $ 8,070.15 |
| 2012-2016 Administrative Activities | $40,899.09 |
| 2018 Order | $21,978.38 |
| 2018 EAJA Motion | $    634.38 |
| Total Attorney's Fee Award | $71,582.00 |

The court acknowledges this award might seem excessive to some.   As the analysis above highlights, Mayda P. and Ms. Ratliff have been in a 12-year administrative and district court conflict with the Commissioner.   But for Ms. Ratliff's tenacity and commitment to her client, Mayda P. would never have been successful in her journey to receive disability benefits.   It must be stated again: "[T]he specific purpose of EAJA is to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." <u>Jean</u>, 496 U.S. at 163 (referencing <u>Hudson</u>, 490 U.S. at 883).

<u>COSTS</u>

Under the EAJA a successful plaintiff is entitled to recover costs. 28 U.S.C. § 2412(d)(2)(A).   Plaintiff seeks recovery for state and local taxes, out-of-pocket expenses for an expert, copy fees and mileage to attend three administrative hearings.   (Docket 107-1 at p. 1).   On the total attorney's fee award of $71,582 plaintiff is entitled to $4,652.83 as an expense representing

six and one-half percent (6.5%) state and local sales tax on the attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

Plaintiff seeks for reimbursement for out-of-pocket expenses:

| | |
|---|---|
| Vocational evaluator 09/16/13 | $ 693.75 |
| Vocational evaluator 11/13/15 | $ 75.00 |
| Medical records    02/21/14 | $ 38.62 |
| Medical records    10/13/15 | $ 10.00 |
| Mileage (3 round trips to Hot Springs for hearings (120 mi. @ 40 ¢ x 3) | $ 144.00 |
| | $ 961.37 |

Reviewing Ms. Ratliff's time logs, each of these expenses were generated between the 2011 sentence six remand order and the decision of the Appeals Council in 2016.   (Docket 107-2 at pp. 16, 20, 24, 37 & 39).   The court finds the reasonable expenses of an expert witness and other costs associated with hearings on remand are reimbursable.   Plaintiff is entitled to reimbursement for $961.37 as costs.   28 U.S.C. § 2412(d)(2)(A).

Plaintiff is entitled to $400 for court filing costs to be paid from the Judgment Fund pursuant to 28 U.S.C. §§ 1920 and 2412(a)(1).[7]

**ORDER**

Based on the above analysis, it is

---

[7]On March 23, 2010, the court authorized Mayda P. to proceed on an *in forma pauperis* basis.   (Docket 5).   Upon receipt of these costs from the Judgment Fund, Mayda P. is required to pay the $400 filing fee to the Clerk of Court.

ORDERED that plaintiff's motion (Docket 106) is granted in part and denied in part.

IT IS FURTHER ORDERED that plaintiff is awarded $77,196.20 comprised of $71,582 in attorney's fees, $4,652.83 as an expense representing six and one-half percent (6.5%) state and local sales tax on the attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412, and $ 961.37 for other costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

IT IS FURTHER ORDERED that plaintiff is entitled to $400 for court filing costs to be paid from the Judgment Fund pursuant to 28 U.S.C. §§ 1920 and 2412(a)(1).

IT IS FURTHER ORDERED that this award is without prejudice to plaintiff's right to seek attorney's fees under § 206(b) of the Social Security Act, 42 U.S.C. § 406(b), subject to the offset provision of the Equal Access to Justice Act; however, this award shall constitute a complete release from and bar to any and all other claims plaintiff may have relating to the Equal Access to Justice Act in connection with this case.

IT IS FURTHER ORDERED that under Astrue v. Ratliff, 560 U.S. 586, 595-98 (2010), Equal Access to Justice Act fees awarded by the court belong to the plaintiff and are subject to offset under the Treasury Offset Program, 31 U.S.C. § 3716(c)(3)(B).

IT IS FURTHER ORDERED that the Equal Access to Justice Act fees shall be paid to plaintiff Mayda P. but delivered to plaintiff's attorney

Catherine Ratliff, Ratliff Law Office, 2006 S. Dorothy Circle, Sioux Falls,

South Dakota 57106.

Dated February 8, 2019.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE